**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SURINDER SINGH,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

No. 08-72612

Agency No. A096-169-896

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 14, 2013
San Francisco, California

Before: FISHER and NGUYEN, Circuit Judges, and GARBIS, District Judge.[**]

Surinder Singh petitions for review of the BIA's denial of his application for

asylum, withholding of removal and relief under the Convention Against Torture.

We grant the petition and remand to the BIA.

---

[*]This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]The Honorable Marvin J. Garbis, Senior United States District Judge for
the District of Maryland, sitting by designation.

1. The BIA did not engage in impermissible factfinding, in violation of 8 C.F.R. § 1003.1(d)(3)(iv), in concluding that the government met its burden of rebutting the presumption of a well-founded fear of future persecution notwithstanding the IJ's failure to reach the issue. In making its determination, the BIA applied the pertinent legal standard to the facts as found by the IJ. Consequently, the BIA decided a mixed question of law and fact, as permitted by 8 C.F.R. § 1003.1(d)(3)(ii).

2. In denying Singh's asylum and withholding of removal claims, the BIA and IJ failed to conduct an "individualized determination" of whether and how any changed conditions in India affect Singh's particular situation, based on the nature of the past persecution he experienced at the hands of Punjabi police. *See Ali v. Holder*, 637 F.3d 1025, 1030 (9th Cir. 2011) ("The hallmark of an 'individualized determination' is a tailored analysis of the petitioner's specific harms and circumstances. Where past persecution has been established, generalized information from a State Department report on country conditions is not sufficient to rebut the presumption of future persecution." (internal quotation marks omitted)); *Lal v. INS*, 255 F.3d 998, 1010-11 (9th Cir. 2001) (stating that when a State Department report generally indicates that human rights violations are no longer widespread, the BIA must undertake an individualized assessment to

determine whether "the individual who suffered past persecution is among the general population that is not suffering from a 'sustained pattern' of human rights violations, or whether the applicant is among the unlucky few who are most vulnerable to abuse . . . [,] tak[ing] account of the specific attributes of the past persecution on record").

The BIA did not undertake its own analysis of this issue, instead concluding that the IJ's analysis was adequate. The IJ made only general references to improving conditions in India, relying largely on the end of the period of militancy in the mid-1990s and the State Report's failure to discuss whether human rights violations are still occurring in Punjab. The BIA erred in relying on the IJ's observations. First, the IJ's statements regarding changed country conditions were made in the context of Singh's CAT claim, for which Singh bears the burden of proving that he is more likely than not to be tortured if removed to India. *See* 8 C.F.R. § 1208.16(c)(2). The BIA improperly extrapolated the IJ's conclusion regarding Singh's CAT claim to support a conclusion the IJ did not make with respect to Singh's asylum and withholding of removal claims, for which the *government* bears the burden of proof once past persecution has been established. *See* 8 C.F.R. § 208.13(b)(1) (asylum); *id.* § 1208.16(b)(1)(i)(A) (withholding of removal).

Second, the IJ's generalized observations regarding changed country conditions were themselves insufficient to constitute an "individualized" or "tailored" analysis of whether and how the current conditions in India affect Singh's own circumstances. The IJ's statement "that the period of militancy from the mid 1980s until the mid 1990s is long over and that it is very unusual for someone who is just a rank and file Akali Dal Mann party member to be mistreated" does not "take account of the specific attributes of [Singh's] past persecution" as required by our precedent. *Lal*, 255 F.3d at 1011. Singh testified that he and numerous family members were arrested and beaten by the police in 2001, *after* the counterinsurgency of the 1980s and 1990s was "long over," and that even though he was not a leader of Akali Dal Mann, he was persecuted because he was suspected of having information about, or being an "accomplice" of, suspected militants. The IJ failed to explain why Singh would no longer be persecuted upon return to India in light of extensive record evidence of ongoing illegal arrests, disappearances and mistreatment or killings of arrestees in that country.

Although we are skeptical that the government can meet its burden of rebutting the presumption of future persecution to which Singh is entitled, we

remand to the BIA to conduct an individualized analysis of the record and Singh's particular situation. *See Ali*, 637 F.3d at 1031.

3.     In affirming the IJ's denial of CAT relief, the BIA relied upon the IJ's changed country conditions analysis. The IJ's failure to conduct a sufficiently individualized analysis of whether and how changed conditions in India would affect Singh's particular situation warrants remand as to Singh's CAT claim as well. *See Nuru v. Gonzales*, 404 F.3d 1207, 1218 & n.6 (9th Cir. 2005) (holding that individualized consideration of changed country conditions is also required in the context of CAT claims).

Accordingly, we grant the petition and remand to the agency for further consideration consistent with these proceedings. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam).

**PETITION GRANTED.**